IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JONENNE ROMERO,**

      Plaintiff,

v.                                                                  No. CIV **02-499 MCA/WDS**

**NEW MEXICO DEPARTMENT OF
CORRECTIONS, CENTRAL NEW MEXICO
CORRECTIONAL FACILITY,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

THIS MATTER is before the Court on Defendant New Mexico Department of Corrections, Central New Mexico Correctional Facility's (Defendant) *Motion for Summary Judgment* filed on June 18, 2003. [Doc. No. 35]. The motion is fully briefed. After careful consideration of the parties' briefs and supporting exhibits, along with the pertinent law, the Court concludes that Defendant's *Motion for Summary Judgment* should be denied. The Court's reasoning follows.

### BACKGROUND

On May 6, 2002, Plaintiff Jonenne Romero (Plaintiff) filed her *Complaint for Damages From Sex Discrimination, Retailiation, and Hostile Work Environment Sexual Harassment*. [Doc. No. 1.] The Complaint alleges three claims: hostile work environment sexual harassment, retaliation, and sex discrimination. [Id.]

In August 1999, Plaintiff began working for Defendant's Central New Mexico Correctional Facility (CNMCF) as a corrections officer. In May 2001, Plaintiff was promoted to a correctional officer sergeant position with CNMCF, and continues to be employed by CNMCF in that position. [Doc. No. 36, Ex. G.]

Plaintiff alleges that in the summer of 2000, Domingo Marrero (Marrero), a co-worker, began to sexually harass her. Marrero allegedly masturbated in front of Plaintiff, grabbed her hand and forced her to touch his penis, and inappropriately touched Plaintiff in a sexual manner. The conduct purportedly continued for a period of time and was unreported.

In April 2001, Plaintiff complained of Marrero's conduct for the first time to co-worker, Margaret Smith (Smith). Smith reported Marrero to a state roster coordinator who then conveyed the complaint to Warden Ronald Lytle (Warden Lytle). [Doc. No. 36, Ex. D.] According to Plaintiff's Complaint, rather than receiving any discipline, Marrero was given a requested transfer to Santa Fe. Defendant does not dispute that Marrero received no discipline. [Doc. No. 45, pp. 3, 4.]

In addition, Plaintiff contends that Gilfred Duran (Duran) sexually harassed her. Duran was a supervisor for New Mexico Correction's Department from about 1991-1992 until 2000-2001, when he was promoted to a lieutenant position. [Doc. No. 42, Ex. 2.] He currently is employed as a lieutenant for Defendant. Duran testified that as a sergeant, he was a first-line supervisor in charge of correctional officers. [Id., p. 6.]

Plaintiff alleges that over a period of eight months (from the summer of 2000 until about April 2001), Duran, without consent, placed his hands on her breasts during work when she was in a room alone with him, or out of view from others. Plaintiff asserts that this conduct occurred at least twenty times. More specifically, Plaintiff contends that Duran would rub his groin against Plaintiff's

backside, simulating a sex act. Plaintiff protested unsuccessfully to Duran in the attempt to get him to cease this conduct. [Doc. No. 1, ¶ 16.] Plaintiff did not complain about Duran to any other supervisor, until she reported his conduct to Captain Steve Saavedra in April 2001. [Id. at ¶ 17.] Also, in April 2001, Plaintiff complained of Duran to Smith, without identifying him, and then followed up by writing a memo to Warden Lytle, dated April 12, 2001, identifying Duran and his alleged inappropriate sexual conduct. [Doc. No. 36, Exs. D, E.] As a result of Plaintiff's complaints, Duran apparently received some type of discipline for "horseplay." [Doc. No. 42, Ex. 8, p. 15.]

Defendant asserts that prior to April 2001, it was unaware of any complaints of Marrero's or Duran's alleged sexual harassment. In addition, Defendant claims that once it learned of Plaintiff's complaints, it investigated the complaints and the alleged harassment ceased. Further, Defendant explains that department regulations and directives prohibit sexual harassment and provide procedures for reporting illegal discriminatory conduct, so that prompt remedial action can be implemented. [Doc. No. 36, Undisputed Material Fact No. 2, Exs. A, B.]

On April 13, 2001, the day after her memo to Warden Lytle, Plaintiff received notice that she would be promoted to sergeant. In Plaintiff's April 12 memo, she claimed that she had been afraid to report the alleged harassment and/or to identify Duran because of possible retaliation. Although she was promoted to sergeant, Plaintiff alleges that she was the victim of a number of retaliatory acts in violation of Title VII, including unfair job assignments, disciplinary actions, additional harassing comments and/or cartoons, sexually insulting comments about her relationships with other men, and exclusion and isolation in the workplace.[1] [Doc. No. 1, ¶¶ 20, 21; Doc. No. 42, p. 2, ¶ 2.] Plaintiff

---

[1] While not considered in deciding this summary judgment motion, Plaintiff also asserts that two other women employees complained of similar sexual harassment by Marrero and Duran at about the same time.

also asserts that she was the victim of Title VII gender discrimination due to being treated less favorably than similarly-situated male employees. [Doc. No. 1, ¶¶ 35-43.]

## ANALYSIS

**I.      SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits, or documentary evidence, that there is an absence of evidence to support the opposing party's case, and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment. Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

In addition, the Tenth Circuit has recently explained that the nonmovant's burden to respond arises only where the summary judgment motion is properly "supported." Reed v. Bennett, 312 F.3d 1190, 1194 (10th Cir. 2002).

>   Accordingly, summary judgment is "appropriate" under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c). If the evidence produced in support of the summary judgment motion does not meet this burden, "summary judgment must be denied *even if no opposing evidentiary matter is presented.*"

Id. (emphasis in original) (internal citation omitted). Thus, whether the nonmovant properly responds or not, the Court still must decide if Defendant met its initial burden of demonstrating that no material issues of fact remain for trial.  Id.

## II.  SEXUAL HARASSMENT CLAIM

Defendant is correct that to survive summary judgment on a sexual harassment claim under Title VII, the record must support both (1) an inference of a sexually-hostile work environment and (2) a basis for employer liability.  Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66 (1986).  See also Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672-73 (10th Cir. 1998) (issue of the presence of hostile work environment immaterial after Court disposed of claim based on an absence of employer liability).  Here, Defendant takes no stance as to whether Plaintiff can demonstrate an inference of a sexually-hostile work environment,[2] but, instead, claims it is entitled to summary judgment on the sexual harassment claim because there is no basis for employer liability.

An employer may be subject to liability for alleged sexual harassment by a supervisor in the workplace in any of the three following instances:

>   (1) where the acts are committed by an employee acting "within the scope of [his or her] employment"; (2) where the employer was negligent or reckless; or (3) where the [allegedly harassing] employee purported to act or to speak on behalf of the employer and there was reliance upon apparent authority, or the harasser was aided by the agency relation.

---

[2] Similarly, nothing in the Court's decision here should be read to mean that the Court views Plaintiff's evidence of sexual harassment to be compelling. The Court need not and does not reach the merits of the claim in this opinion.

Id. at 673.  Defendant claims generally that none of the three bases for imposing liability on the employer can be established.  However, Defendant argues primarily that there is an absence of genuine issue of material fact for trial as to the third prong, i.e., whether Marrero or Duran acted with apparent authority.[3]  Plaintiff also focuses her argument on the third basis for liability and the availability of an affirmative defense.

In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), the Supreme Court held that where harassment by a supervisor culminates in a "tangible employment action," such as a discharge or failure to promote, the employer is strictly liable for the supervisor's harassment.  However, here, there is no tangible employment action.  "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." Id. at 765.

> The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Id.  While proof that an employer promulgated an anti-harassment policy with a complaint procedure is not absolutely necessary in every instance, failure to have such a policy will make it difficult for an employer to prove that it exercised reasonable care to prevent and correct harassment.  Id.  Failure

---

[3] Unlike Duran, there is no evidence that Marrero was a supervisor.  With respect to alleged harassment by a co-worker like Marrero, employer liability is typically analyzed under a negligence standard, i.e., whether the employer negligently or recklessly failed to respond to the harassment. Hirschfeld v. N.M. Corr. Dep't, 916 F.2d 572, 577 (10th Cir. 1990).  Here, however, Defendant's summary judgment motion treats the question of employer liability for alleged harassment by Marrero in the same manner as alleged harassment by supervisor Duran, and discusses generally the availability of the Faragher/Burlington affirmative defense as to the claims involving alleged harassment by both Marrero and Duran.  Thus, the Court also makes no distinction in this opinion as to supervisory and non-supervisory liability.

to establish either prong of the affirmative defense will defeat summary judgment in favor of the employer. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1208 (10th Cir. 2000).

The Court determines here that genuine issues of material fact exist as to whether Defendant "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." Defendant attached to its supporting memorandum several excerpts from policy documents prohibiting unlawful discrimination and sexual harassment in the workplace. [Doc. No. 36, Exs. A and B.] However, the partial policies state that they were issued and effective on July 2, 2001. Nothing in the exhibits indicates that there were similar policies in effect and/or promulgated before that date. Plaintiff first contends that she was unlawfully harassed in the summer of 2000; thus, it is possible that there were no policies in effect at that time.[4]

In addition, the partial policies or guidelines attached as exhibits do not provide any type of procedure for reporting harassment or discrimination when the alleged harasser is the supervisor, nor does Defendant indicate how the policies were distributed or posted. Therefore, it is not clear whether Plaintiff was informed of how she could report such alleged harassment by Duran, even though she eventually did report his conduct to the warden. See Wilson v. Tulsa Junior College, 164 F.3d 534, 539-540 (10th Cir. 1998) (finding that employer's policy was materially deficient where it did not provide adequate reporting instructions for employees); Frederick v. Sprint/United Mgm.t Co., 246 F.3d 1305, 1314 (11th Cir. 2001) (in order to establish that company acted reasonably to stop harassment, it must demonstrate that it effectively published its anti-harassment policy, that it

---

[4] Defendant summarily states that "despite policies and procedures, plaintiff did not avail herself of them for some time" and that once she did avail herself of the policies and procedures, Defendant took swift corrective action. [Doc. No. 36, p. 8.] Notwithstanding Defendant's argument about policies and procedures that purportedly were in place in the year 2000, there is no record evidence of such policies.

contained reasonable complaint procedures, that it contained no other fatal defect, and that the company acted reasonably prompt in responding to the complaint).

Moreover, while it appears that some kind of training regarding sexual harassment in the workplace was available, Duran never received it, at least for the period of 1996 through May 2001. [Doc. No. 42, Supplemental Undisputed Material Fact No. 1 and attached exhibits.]

In addition, Defendant provides little evidence to show exactly what type of investigation was conducted into the allegations, i.e., when the investigation was initiated, who was interviewed, the extent of the investigation, the results of the investigation, and what types of discipline were issued, if any. Warden Lytle's only testimony regarding discipline of the alleged harassers was that Duran received some sort of discipline for "horseplay." It is unclear whether actual discipline was issued in the form of a verbal or written reprimand.

The evidence before the Court raises concerns about the effectiveness and good faith intention of the investigation. Plaintiff provided undisputed evidence that as part of the investigation, Plaintiff and another complaining female were required to take polygraph examinations related to their allegations. Initially, Warden Lytle was advised that the two women had scored "pass/truthful" on the polygraphs. [Doc. No. 42, Ex. 8, p. 19.] In contrast, the later polygraphs of Marrero and Duran were deemed "inconclusive." [Id. at p. 20.] Subsequent to the "inconclusive" polygraph results of Marrero and Duran, the results of the two women employees' polygraphs were changed from "pass/truthful" to "inconclusive." [Doc. No. 42, Ex. 9.] Warden Lytle could provide no explanation for that change, and testified that he had not even seen the conclusions of the June 5, 2001 investigative report prior to his April 2003 deposition. [Doc. No. 42, Supplemental Undisputed Material Fact Nos. 8-17; Ex. 8, p. 23.]

This simply is not a case where Defendant has demonstrated an absence of material fact[5] with respect to whether it exercised reasonable care to prevent sexual harassment through practices of maintaining a complaint procedure and policy, distributing the policy to its employees, training its employees and supervisors in matters concerning sexual harassment, and investigating complaints in accordance with its policy.  These questions go unanswered based on the record before the Court, and the Court can make no determination as to the reasonableness of Defendant's actions in handling the complaints.  In other words, while Plaintiff testified that she did not suffer the same type of alleged harassment by Marrero and Duran after she reported their conduct in April 2001, it is not at all clear what actions Defendant actually took that prevented and promptly corrected the alleged harassment.[6]  The fact that the alleged harassment might have ceased does not end the inquiry under these circumstances.

Thus, the Court denies Defendant's request for summary judgment as to the sexual harassment claim, because a genuine issue of material facts exists as to whether Defendant exercised reasonable care in preventing and promptly correcting alleged sexual harassment.

---

[5] In a vicarious liability claim, the employer bears the burden of establishing, as an affirmative defense, that it exercised reasonable care to prevent harassment. Wilson, 164 F.3d at 541 n. 4.

[6] Defendant repeatedly argues that because the alleged harassment stopped, then it is absolved from any liability.  Yet, the Tenth Circuit in Harrison v. Eddy Potash, Inc., 248 F.3d 1014, 1026 (10th Cir. 2001), cert. denied, 534 U.S. 1019 (2001), rejected a similar argument. "[W]e effectively rejected the position advanced in Indest, i.e., that an employer's prompt corrective action can be sufficient by itself to avoid vicarious liability under Title VII for sexual harassment committed by a supervisory employee."

### III.    RETALIATION CLAIM

Tenth Circuit precedent establishes that a plaintiff must provide proof of three elements to establish a retaliation claim under Title VII:  that (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  Petersen v. Utah Dep't of Corr., 301 F.3d 1182, 1188 (10th Cir. 2002).  Here, Defendant argues that it is entitled to summary judgment on the retaliation claim because Plaintiff did not suffer an adverse employment action. [Doc. No. 36, p. 9.]

While the Tenth Circuit liberally defines the phrase "adverse employment action," it also recognizes that Title VII does not prohibit all distasteful practices by employers.  Id. at 1188.  Mere inconveniences or alterations of job responsibilities, without more, typically do not amount to adverse employment actions.  Id. at 1189.  The determination of whether certain practices constitute adverse employment actions must be made on a case-by-case basis.  An employer's retaliation must be a "'materially adverse employment action.'"[7]  Id.

Here, Defendant argues that Plaintiff's allegations of daily ridicule, insult, disparate treatment, harassment, unjustified disciplinary action, and isolation do not rise to the level of an adverse employment action because her employment status was not affected.  Plaintiff counters by alleging that she was retaliated against in the following ways:  (1) unjustified disciplinary actions in the form

---

[7] Contrary to Plaintiff's position, it appears that recent Tenth Circuit cases have adopted a materiality requirement as to whether certain practices constitute adverse employment actions. Aquilino v. Univ. of Kan., 268 F.3d 930, 934 (10th Cir. 2001) (adverse action must be "a significant change in employment status, such as . . . firing, failing to promote, reassignment with significantly different responsibilities").  See also Mallinson-Montague v. Pocrnick, 224 F.3d 1224, 1232 (10th Cir.2000) (finding evidence sufficient to demonstrate that the adverse employment action was "significant, material, and tangible.")

of letters of reprimand three to six months after the investigation was completed; (2) retaliatory assignments to posts that deprived her of an opportunity to advance in her position of sergeant; (3) hostile work environment; and (4) assignments to posts where she would be held up to ridicule, intimidation, and humiliation. [Doc. No. 42.]

The Court notes that on April 20, 2001, some days or weeks after her complaint of harassment, Plaintiff was placed on a paid five-day administrative leave, pending investigation and review of her complaint. [Doc. No. 42, Ex. 11.] In contrast, the alleged harassers apparently were not placed on any type of leave. [Doc. No. 42, Ex. 8, p. 52-53.] During his deposition, Warden Lytle explained that he placed Plaintiff on administrative leave to help her heal. [Doc. No. 42, Ex. 8, p. 51.]

| | |
|---|---|
| Lytle: | . . . Do you know why I gave her admin leave? |
| Attorney: | No, I don't. |
| Lytle: | Because she had lost her mind temporarily because she was screaming, because she was balling and she was out of control and her medication was off and she could not go to work and she was distraught over the allegations that she had made. I had no other alternative but to let her get out of there, that was why. |

[Id. at pp. 50-51.]

The formal Administrative Leave letter addressed to Plaintiff does not document that Defendant was attempting to protect Plaintiff in some way by placing her on leave. Instead, the letter states that due to Plaintiff's complaint and statements regarding a threatening work environment, she was being referred to the Employee Assistance Program (EAP). In the letter, Warden Lytle further threatened to discipline Plaintiff if she failed to comply with the EAP referral. [Doc. No. 42, Ex. 11.]

On another occasion, apparently subsequent to Plaintiff's complaints of sexual harassment, Plaintiff approached Warden Lytle about another matter at work she was angry about, and he told her "You need to quit your whining and bitching." [Doc. No. 42, Ex. 8, p. 79.]

Some of Plaintiff's allegations are troubling. However, for the most part, the Court does not find Plaintiff's evidence of a retaliatory adverse employment action to be particularly strong. Nonetheless, for purposes of summary judgment, the Court concludes that there are genuine issues of material fact in dispute as to whether there was retaliatory harassment in the form of unwarranted discipline and other workplace conduct that could be found sufficiently severe to constitute an adverse employment action. See Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir. 1998).

The Court is also concerned with the possibility that Plaintiff is being denied an opportunity to prove herself in the position to which she was promoted. If such were demonstrated to be true, Plaintiff might be able to establish that the promotion was a sham, that she was being set up to fail, and, therefore, that the alleged retaliatory conduct adversely affected her status as an employee. See Sanchez v. Denver Pub. Schs., 164 F.3d 527, 533 (10th Cir. 1998). While the Court reaches no ultimate determination as to these matters, it finds that Plaintiff has raised a genuine issue of material fact for trial as to the retaliation claim. Thus, the Court denies Defendant's request for summary judgment with respect to Plaintiff's retaliation claim.

**IV.   SEX DISCRIMINATION CLAIM**

In order to establish a prima facie case of sex discrimination, Plaintiff bears the initial burden of showing (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; and (3) that she was treated less favorably than similarly-situated males. Sanchez, 164 F.3d

-12-

at 531. Here, Defendant claims that Plaintiff cannot satisfy her initial burden of demonstrating an adverse employment action, or that she was treated less favorably than similarly- situated males.

For the same reasons that were set forth above, the Court concludes that there is a genuine issue of material fact regarding whether certain alleged actions taken by Defendant were adverse employment actions. In addition, the Court finds that there is a genuine issue of material fact regarding whether Plaintiff was treated less favorably than some of her male counterparts based on Plaintiff's affidavit testimony that four other male sergeants, who were promoted near the same time she was promoted, received more favorable work assignments that she requested and was denied. Defendant supplied no response to this specific allegation concerning the four male sergeants. Thus, the Court determines that a genuine issue remains for trial as to the sex discrimination claim. However, the Court rejects Plaintiff's argument that Defendant's failure to discipline a male lieutenant, Chris Stamp, is evidence to support her sex discrimination claim. A lieutenant is not similarly-situated to Plaintiff, who is a sergeant.[8]

Therefore, the Court denies Defendant's request for summary judgment with respect to the sex discrimination claim because genuine issues of material fact remain regarding whether Plaintiff suffered an adverse employment action, and/or whether Defendant treated similarly-situated male sergeants more favorably.

---

[8] While the McDonnell-Douglas burden shifting framework applies to an analysis of Title VII retaliation and sex discrimination claims, the Court need not reach that analysis here because Defendant argues only that Plaintiff fails to meet her initial burden of demonstrating certain elements of her prima facie cases of retaliation and discrimination.

## CONCLUSION

For all of the above-stated reasons, the Court denies Defendant's Motion for Summary Judgment.

**IT IS, THEREFORE, ORDERED** that Defendant's *Motion for Summary Judgment* [Doc. No. 35] filed on June 18, 2003 is **DENIED.**

**SO ORDERED**, this 11th day of August, 2003, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
*United States District Judge*